Carlos DELBREY, Appellant,

v.

John E. POTTER, Postmaster General, United States Postal Service, Appellee.

No. 00–1411.

United States Court of Appeals, Federal Circuit.

DECIDED: June 13, 2001.

Before BRYSON, GAJARSA, and LINN, Circuit Judges.

## DECISION

PER CURIAM.

Carlos Delbrey appeals from a decision of the United States Postal Service Board of Contract Appeals holding Mr. Delbrey liable for $104,403.76 in missing postal revenue and stamp stock. Because the Board's factual findings were supported by substantial evidence and the Board made no legal error, we *affirm*.

## BACKGROUND

The pertinent facts of this case are undisputed. From 1982 to 1995, Mr. Delbrey contracted with the Postal Service to operate the La Cumbre Contract Station in San Juan, Puerto Rico. Pursuant to the contract, the La Cumbre station sold postage and money orders and reported the amounts of sold postage and money orders to the Postal Service on a daily basis. When a money order was sold, the original and one copy were given to the purchaser of the money order and the remaining copy was sent to the Postal Service.

The contract between Mr. Delbrey and the Postal Service contained three pertinent clauses cited by the parties. Paragraph 7 of the General Provisions section stated:

> INSPECTION OF CONTRACT WORK—The COR [Contracting Officer's Representative] shall periodically review the Contractor's performance to assure the Contractor is performing in accordance with postal rules and regulations. The COR will immediately bring to the attention of the Contractor all unsatisfactory service. If the Contractor continues to perform unsatisfactorily, the Contracting Officer will formally notify the Contractor in writing of the deficiencies and that the continued unsatisfactory performance may be cause for termination of the contract.

The Specific Requirements section of the contract stated:

> 18. The contractor shall be personally responsible, accountable and answerable for the faithful performance and discharge of all the duties and obligations assumed by him in this contract, wheth-

er or not he personally conducts the Contract Unit. The contractor shall be chargeable with all acts and omissions of his employees who assist in the conduct of the Contract Unit.

19. All monies received from the operation of the Contract Unit are the property of the U.S. Postal Service and are not the property of the contractor. Such monies shall not be commingled with personal or other funds of the contractor, and shall not be used for any purpose other than in connection with the postal duties and functions of the Contract Unit. The contractor shall account for such monies at the close of each day's business.

In late May 1995, the Postal Service noticed discrepancies between the value of money orders reported sold by the La Cumbre station and the value of La Cumbre money orders that were being cashed. On August 1, 1995, the Postal Inspection Service conducted a formal financial review, which resulted in a determination that $104,403.76 in receipts for money orders and stamp stock was missing from the La Cumbre station account. Shortly thereafter, the Postal Service terminated the contract with Mr. Delbrey–a decision that was upheld by the Postal Service Board of Contract Appeals and was not appealed to this court. In a separate and subsequent appeal, the Board ordered Mr. Delbrey to reimburse the Postal Service for the missing funds. Mr. Delbrey appeals that order.

## DISCUSSION

■ The parties do not dispute any of the underlying facts, but only the interpretation of the cited contract provisions. Contract interpretation is a question of law, which we review de novo. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997 (Fed.Cir.1996).

■ Mr. Delbrey asserts that the Postal Service was negligent in overseeing the finances of the La Cumbre station and that its negligence bars it from recovering the missing funds. According to Mr. Delbrey, paragraph 7 of the contract imposes an obligation on the Postal Service to monitor all financial transactions at the station and to notify Mr. Delbrey of any discrepancies. Furthermore, Mr. Delbrey claims that because the contract station retains no copies of money orders, he cannot be accountable for discrepancies in the value of the money orders recorded compared to the total value of the money orders issued.

Mr. Delbrey's position is incorrect. The Postal Service was not negligent, because it had no duty to micromanage the accounting affairs of its contractor. Paragraph 7 does not place any obligation on the Postal Service to administer its contractor's books and records, nor does it limit the Postal Service's remedies if problems occur with the contract. Rather, it specifies the procedural steps available to the Postal Service to ensure satisfactory performance by the contractor, as well as the procedures that may be used to terminate the contract. Adopting Mr. Delbrey's construction would have the effect of reversing the contract provisions that impose on the contractor responsibility for financial misconduct at contract postal stations.

Paragraphs 18 and 19 of the contract state that Mr. Delbrey is personally responsible for ensuring that Postal Service money is not misappropriated in any fashion. A more unequivocal assignment of responsibility is difficult to imagine. Nor do the money order accounting procedures afford Mr. Delbrey any ground for relief, for the contract requires Mr. Delbrey to establish the necessary accounting procedures to "account for [Postal Service] monies at the close of each day's business."

Mr. Delbrey further asserts that the Postal Service is estopped from collecting reimbursement for any losses incurred between May 25, 1995, when discrepancies were first noticed at the La Cumbre station, and August 1, 1995, when the Postal Inspection Service audited the station. According to Mr. Delbrey, had he been notified immediately, he could have taken steps to prevent further losses.

Mr. Delbrey raised this estoppel argument during the contract termination proceedings and the Board rejected it. To the extent that Mr. Delbrey is attempting to relitigate the question of the propriety of the Postal Service's handling of the investigation, the argument is foreclosed by collateral estoppel principles. In any event, the evidence before the Board–particularly the declaration of Mary Calderon–makes clear that various procedures were necessary to identify and isolate the suspected problems. In light of that evidence, we sustain the Board's determination that the time that the Postal Service took in its investigation was reasonable under the circumstances and does not estop the Postal Service from enforcing its contract rights against Mr. Delbrey.